IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| BETH HUMBLE, | ) | CV 09-135-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| COUNTY OF MISSOULA, Leslie | ) | |
| Halligan, David Conway, Gorden Schmill, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  Introduction

Plaintiff Beth Humble brings this action under 42 U.S.C. § 1983 alleging

violations of her federal constitutional rights stemming from a February 2008

incident in which Missoula County officials arrested her and required her to

undergo an involuntary mental health evaluation.  The Complaint also alleges

pendent state claims for violation of her rights under the Montana Constitution and

intentional infliction of emotional distress, but Plaintiff abandoned those claims

during summary judgment briefing.  Doc. No. 16 at 13.  Defendants Missoula

County, Leslie Halligan, David Conway, and Gorden Schmill have filed a motion

for summary judgment in which they argue that the individual Defendants are

immune from suit and the Plaintiff has failed to state a claim against Missoula

County.  For the reasons that follow, Defendants' motion for summary judgment is

granted as to Missoula County and denied as to the individual Defendants.

## II.  Factual Background

On February 27, 2008, Missoula County Sheriff's Department dispatch

received information that the Plaintiff, Beth Humble, was possibly suicidal.

Plaintiff has recently received what she believed was an unnecessary medical

procedure.  Deputy Sheriff David Conway, a Defendant in this case, conducted a

welfare check and spoke with Plaintiff several times on February 27 and 28, 2008.

According to Conway, Plaintiff refused to seek assistance, and told Conway she

had no immediate plans to harm herself, but that she may do so in the future.

Plaintiff denies making this statement.

Defendant Conway knew that Plaintiff was taking prescription Oxycontin,

and told Plaintiff he was concerned that she might misuse the medication.

Plaintiff responded that if she was going to commit suicide she would not use pills, which Defendant Conway assumed meant she would use a firearm instead. When Conway asked Plaintiff if she had firearms in her home she said she did not. Conway then asked whether Plaintiff was willing to allow a friend to keep any firearms that she might have, and Plaintiff again responded in the negative. Defendant Conway observed Plaintiff's demeanor swinging from crying and sobbing to screaming and yelling profanities.

During Defendant Conway's interactions with Plaintiff on February 27, she had friends and neighbors with her.  Later on February 27 and into February 28, Plaintiff became upset with her friends and asked them to leave her home.  On February 28, some of Plaintiff's friends went to the Sheriff's Department out of concern for her safety.  They met with Deputy Missoula County Attorney Leslie Halligan, who is a Defendant in this case.  Plaintiff's friends told Halligan that the Plaintiff had made veiled threats against herself and others.  They also told Defendant Conway that the Plaintiff had firearms in her house.

Defendant Halligan then contacted Don Goeke, Ph.D., a mental health care professional at the Western Montana Mental Health Center.[1]   Goeke had

---

[1]Goeke has a Ph.D. in social work and a B.S. in psychology.  He has completed 23 doctoral hours in social psychology.

independently interacted with Plaintiff the previous day, after he received a call from a nurse in Plaintiff's doctor's office.  The nurse told Goeke that Plaintiff was upset about receiving unnecessary treatment and that Plaintiff made a suicidal comment as she left the office, referring to a gun in her closet.  Goeke called Plaintiff and she became very angry about her recent medical procedure, stating that she was unsure whether she could go on.  Goeke asked if she was suicidal and she said no, so Goeke ended the call.  When contacted by Defendant Halligan, Goeke agreed to accompany Sheriff's Department personnel to Plaintiff's home for an in-home evaluation, but Plaintiff could not be located.  Goeke's note from February 28, 2008, states, "Apparently, Ms. Humble keeps calling 911 and other agencies or facilities making either oblique suicidal comments or anger threats towards others.  However, she is not being explicit and denies being suicidal when directly asked."  Doc. No. 13-1 at 9.

Goeke has filed an affidavit in connection with the pending motion, stating he believed at the time it was more likely than not that Humble suffered from a mental disorder sufficient to warrant a commitment for a mental health evaluation. That conclusion is not reflected in Goeke's contemporaneous note from February 28, 2008, nor does the note indicate that he communicated that opinion to Defendant Halligan at the time.

After consulting with Goeke, Defendant Halligan filed a Petition for Commitment.  On page 1 the Petition states, "[T]here are reasonable grounds to believe that Respondent is suffering from a mental disorder and requires commitment."  Doc. No. 13-2 at 5.  On the next page, the Petition states, "Respondent has been diagnosed with a mental disorder and requires commitment...."  Id. at 6.  Contrary to the Petition, Plaintiff had not seen a mental health professional or received a mental health diagnosis at the time the Petition was filed.  The Petition states that Defendant Halligan consulted with Goeke, but does not state the substance of any conclusion or recommendation from Goeke.  Defendant Halligan executed a sworn and notarized verification in which she attested to the truth of the information in the Petition.  Doc. No. 13-2 at 10.  On February 28, 2008, Fourth Judicial District Judge John Larson signed a Commitment Order directing law enforcement officials to apprehend and detain Plaintiff for evaluation.  Judge Larson also ordered that Plaintiff be appointed counsel.

The Commitment Order was served on Plaintiff at her residence on February 28, 2008, by Defendant Conway, Defendant Deputy Gorden Schmill, and Sergeant Mike Dominick.  Plaintiff's attorney was present.  Sergeant Dominick took Plaintiff into custody and brought her to St. Patrick's Hospital.  Defendants

Conway and Schmill remained in Humble's residence and conducted a limited search of Plaintiff's closet, where they had reason to believe Plaintiff kept a firearm.  Defendant Schmill found a .22 caliber revolver in Plaintiff's closet and seized it for safekeeping, due to the risk that Plaintiff presented a threat to herself or others.  Defendant Conway advised Plaintiff's counsel that Plaintiff could retrieve the weapon from the Sheriff's Department upon her release from custody.

Plaintiff was evaluated on February 28, 2008, by J.R. Palmatier, Ph.D., and was found not to meet the criteria for involuntary mental health commitment. After the evaluation Sheriff's Deputy Glenville Kedie transported Plaintiff from the hospital to her home.  Pursuant to instructions from Defendant Halligan, Deputy Kedie asked Plaintiff to surrender any firearms in her possession for safekeeping.  Plaintiff voluntarily surrendered a second .22 caliber handgun and magazine.  Defendant Halligan filed a motion to dismiss the petition the next day, on February 29, 2008.  The Sheriff's Department later returned Plaintiff's firearms, and Missoula County has paid all costs associated with Plaintiff's temporary commitment and evaluation, although Plaintiff claims that she had to obtain counsel before the county paid her hospital bill.

Plaintiff now claims to suffer post-traumatic stress, high anxiety, and depression as a result of the events of February 28, 2008.  Defendants have filed a

motion for summary judgment, claiming immunity for the individual Defendants
and arguing that the Plaintiff has failed to state a claim against Missoula County.

### III.  Analysis

**A.     Summary Judgment Standard**

A party moving for summary judgment is entitled to such if the party can
demonstrate "that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).
A party is entitled to summary judgment where the documentary evidence
produced by the parties permits only one conclusion.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 251 (1986).  On a motion for summary judgment, this Court
must determine whether a fair-minded jury could return a verdict for the
nonmoving party.  Id. at 252.

The party seeking summary judgment bears the initial burden of informing
the Court of the basis for its motion, and identifying those portions of the
pleadings, depositions, answers to interrogatories, and admissions on file, together
with the affidavits, if any, which it believes demonstrate the absence of any
genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has met his initial burden with a properly supported
motion, the party opposing the motion "may not rest upon the mere allegations or

denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, at 248. The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. Id.

In evaluating the appropriateness of summary judgment the Court must first determine whether a fact is material; and if so, it must then determine whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the Court. The applicable substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes which are irrelevant or unnecessary to the outcome are not considered. Anderson, at 248.

**B.     Defendants' Motion**

**1.     Abandoned Claims**

Plaintiff has abandoned her claim for liability under § 1983 against Missoula County, conceding that the record in this case warrants dismissal. Doc. No. 16 at 13. Plaintiff has also conceded her pendent claims under Montana law. Id. Accordingly, the Court grants summary judgment in favor of the Defendants and against Plaintiff on Counts II and III (the state claims), and on Count I as it

relates to Defendant Missoula County.

This leaves only the § 1983 claims in Count I against Defendants Halligan, Conway and Schmill.  Defendants argue that Defendant Halligan is entitled to prosecutorial immunity and all three individual Defendants are entitled to qualified immunity.

### 2.    Prosecutorial Immunity

A prosecutor is entitled to absolute immunity from liability under § 1983 for violating a person's federal constitutional rights when they engage in activities "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  "To determine whether an action is 'prosecutorial,' and therefore entitled to absolute immunity, the Supreme Court has adopted a 'functional approach,' which looks to 'the nature of the function performed, not the identity of the actor who performed it.'" al-Kidd v. Ashcroft, 580 F.3d 949, 958 (9th Cir. 2009)(quoting Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).

"While prosecutors will inevitably participate in activity preliminary to filing charges, they are entitled to absolute immunity 'only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct.'" Ewing v. City of Stockton, 588 F.3d 1218, 1233

(9th Cir. 2009)(quoting al-Kidd, 580 F.3d at 958 (quoting Burns v. Reed, 500 U.S. 478, 494 (1991)).  Absolute immunity does not protect a prosecutor's activities if the prosecutor steps outside her role as an advocate.  A prosecutor is not entitled to absolute prosecutorial immunity when she personally certifies the truthfulness of statements in an application for an arrest warrant.  See Kalina v. Fletcher, 522 U.S. 118, 129 (1997).  In Kalina, the state prosecutor in applying for an arrest warrant filed a "Certification for Determination of Probable Cause" in which she summarized the evidence supporting the charge and then personally vouched for the truth of the facts set forth in the certification under penalty of perjury.  The certification contained two inaccurate factual statements.  The Supreme Court held that while the act of preparing and filing the certification was part of the advocate's function, the certification under penalty of perjury transformed the prosecutor's role into that of a complaining witness rather than a lawyer.  The Supreme Court held that prosecutor in this circumstance was not entitled to absolute prosecutorial immunity.  Id. at 130-131.

The situation here is similar.  Deputy County Attorney Halligan prepared the Petition for Commitment in which she set forth the facts supporting her request to commit Plaintiff, and like the attorney in Kalina, she signed a notarized verification in which she stated, "Leslie Halligan, being first duly sworn upon

-10-

oath, deposes and says:  She is the Petitioner in the above-entitled action; that she

has read the foregoing petition, and knows the contents thereof, and that the

matters, facts and things stated are true of her knowledge, information and belief."

Doc. No. 13-2 at 10.  By so verifying, Halligan stepped out the role of an advocate

and into the role of a witness.  <u>Kalina</u>, 522 U.S. at 130.  As a result she is not

entitled to summary judgment on the basis of absolute prosecutorial immunity.

### 3. Qualified Immunity

Qualified immunity shields a government actor from a suit for damages if a

reasonable official could have believed his or her conduct was lawful, in light of

clearly established law and the information possessed by the official.  <u>Anderson v.</u>

<u>Creighton</u>, 483 U.S. 635, 637-39, 641 (1987).  That is, when a constitutional

violation occurs, "law enforcement officers nonetheless are entitled to qualified

immunity if they act reasonably under the circumstances." <u>See</u> <u>KRL v. Estate of</u>

<u>Moore</u>, 512 F.3d 1184, 1189 (9th Cir. 2008) (citing <u>Wilson v. Layne</u>, 526 U.S.

603, 614 (1999)).

The United States Supreme Court outlined a two-step qualified immunity

analysis in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), requiring district courts to first

determine whether the officer's conduct violated a constitutional right. <u>Saucier</u>,

533 U.S. at 201.  If no constitutional right was violated, the court need not inquire

further.  If a constitutional violation has occurred, the court's second inquiry under Saucier is to ask whether the law was "clearly established" at the time of defendant's alleged misconduct.  Saucier, 533 U.S. at 201.

More recently, the Supreme Court has held that, "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, ____ U.S. ___, 129 S.Ct. 808, 818 (2009).  Following Pearson, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 129 S.Ct. at 818.  The sequence set forth in Saucier remains beneficial in many situations.  Pearson, 129 S.Ct. at 818, and will be applied here.

### a.    Deputy County Attorney Halligan

The Fourth Amendment requires that an arrest warrant "be based 'upon probable cause, supported by Oath or affirmation[.]'"  Kalina, 522 U.S. at 129 (quoting Gerstein v. Pugh, 420 U.S. 103, 117 (1975)).  It is clearly established that the fourth amendment requires a truthful factual showing sufficient to constitute probable cause.  Franks v. Delaware, 438 U.S. 154, 164 (1978).  An "officer who recklessly or knowingly includes false material information in, or omits material information from, a search warrant affidavit 'cannot be said to have acted in an

-12-

objectively reasonable manner, and the shield of qualified immunity is lost.'"

<u>Mendocino Envtl. Ctr. v. Mendocino County</u>, 192 F.3d 1283, 1295 (9th Cir. 1999)

(quoting <u>Branch v. Tunnell</u>, 937 F.2d 1382, 1387 (9th Cir. 1991) overruled on

other grounds by <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th Cir.

2002)) (internal quotation marks and citation omitted). Where a prosecutor

performs the role of complaining witness in support of a request for an arrest

warrant, a false statement by the prosecutor is a Fourth Amendment violation for

which § 1983 provides a remedy.  <u>Kalina</u>, 522 U.S. at 131.

  Under the facts contained in the record, Defendant Halligan is not entitled to

qualified immunity because there is a genuine issue as to whether she made a false

statement in support of her Petition for Commitment when she wrote that the

Plaintiff had been diagnosed with a mental disorder.  As alleged, Defendant

Halligan's actions constituted a violation of a Fourth Amendment right that is

clearly established under <u>Kalina</u>.[2]  The Defendants' motion for summary judgment

with respect to Defendant Halligan is denied.

   **b.**  **Defendants Conway and Schmill**

_____

  [2]Halligan's misstatement was apparently a significant factor in Judge Larson's decision to issue the Commitment Order.  The Commitment Order reads in part, "And this Court having considered the statement of facts supporting the above allegations and *finding that probable cause exists to believe that Respondent has been diagnosed with a mental disorder*, ... IT IS HEREBY ORDERED that Respondent be apprehended ...."  Doc. No. 13-2 at 11 (emphasis added).

The Fourth Amendment protects against unreasonable search and seizure. U.S. Const. amend. IV.  A search conducted outside of the judicial process is a violation of the Fourth Amendment, subject to a few specific exceptions.  Katz v. United States, 389 U.S. 347, 357 (1967).  Defendants Conway and Schmill are alleged to have conducted a warrantless search of Plaintiff's residence after she had been taken into custody and transported to the hospital, seizing a firearm from her closet.  Defendants argue that the search was constitutionally permissible because it was a limited search incident to the lawful execution of the Commitment Order, citing Maryland v. Buie, 494 U.S. 325 (1990).

In Buie, a police officer conducted a protective sweep of a basement after the suspect had emerged from the basement and been handcuffed.  494 U.S. at 328.  The searching officer found a running suit, which was introduced as evidence in the suspect's trial.  Id.  The Supreme Court upheld the search, holding that under the circumstances, the Fourth Amendment allowed for the officer to enter the basement to see if someone else was there.  The Court wrote, "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."  Id. at 337.

-14-

The Defendants' reliance on <u>Buie</u> is misplaced because in this case the deputies expressed no concern over the potential presence of others in Plaintiff's home, and are forthright in stating that they performed a targeted search for the firearm because they were concerned that the Plaintiff, who was in custody and had left the residence, was a danger to herself or others.

Where there is no reason to suspect that another person may be present in the area, a search incident to a lawful arrest "may only include 'the arrestee's person and the area ... from within which he might gain possession of a weapon or destructible evidence.'" <u>Arizona v. Gant</u>, 129 S.Ct. 1710, 1716 (2009) (quoting <u>Chimel v. California</u>, 395 U.S. 752, 763 (1969)). "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." <u>Gant</u>, 129 S.Ct. at 1716.

In this case the Plaintiff had been taken into custody without incident and there was no reason for the deputies to suspect that there was another person in the house.  Under those circumstances, there was no justification for a search incident to lawful arrest.  Because there is no applicable exception to the Fourth Amendment's warrant requirement under clearly establish law, Defendants have failed to show that Deputies Conway and Schmill are entitled to qualified

immunity, and their motion for summary judgment is denied as to the federal claims against Defendants Conway and Schmill.

## IV.  Order

Based on the foregoing, IT IS HEREBY ORDERED that the Defendants' motion for summary judgment (Doc. No. 10) is GRANTED with regard to Counts II and III, and Count I as it pertains to Defendant Missoula County, and is DENIED as to the Count I claims against the individual Defendants.

_____Dated this 9th day of June, 2010.

_____

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT